IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FARID NIKKHOO MOFRAD,

       Petitioner,

v.                                              2:25-cv-01319-KWR-JMR

PAM BONDI, *Attorney General*,
KRISTI NOEM, *Secretary of the
Department of Homeland Security*,
TODD LYONS, *U.S. ICE Field Officer
Director for the El Paso Field Office*, and
DORA CASTRO, *Warden of Otero County
Processing Center*,

       Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on *pro se* Petitioner Farid N. Mofrad's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, filed on December 29, 2025. Doc. 1. On January 23, 2026, the Federal Respondents filed a response. Doc. 10. Warden Dora Castro joined in their response. Doc. 12. Mr. Mofrad filed a reply. Doc. 14. The Court ordered the Federal Respondents to supplement the record, which they did.[1] Docs. 13, 15. United States District Judge Kea W. Riggs referred this case to me pursuant 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 5. Having considered the parties' submissions and the relevant law, I conclude that Petitioner is entitled to relief. Therefore, I recommend that the Court GRANT the petition because Mr. Mofrad is being indefinitely detained without a

---

[1]Although the deadline for Mr. Mofrad to reply to the Federal Respondent's supplementation has not expired, because I recommend granting the relief he seeks, I enter this recommendation now. Should Mr. Mofrad disagree with any part of this recommendation, he may file objections, including any argument he intended to make in response to the government's supplementation.

"significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

## I.    Background

Mr. Mofrad was born in Iran in 1959. Doc. 10-2 at 1. He left Iran in 1975, while the country was still under the rule of the Shah of Iran. Doc. 1 at 13. Shortly thereafter, in 1978, the Iranian Revolution began, which eventually led to the fall of the Imperial State of Iran and the rise of the modern-day Islamic Republic of Iran. *Id.*

Mr. Mofrad entered the United States in 1975 on a non-immigrant student visa (F-1).[2] Doc. 10-2 at 3. On April 4, 1994, an immigration judge ordered Mr. Mofrad removed.[3] *Id.* That removal order became final on February 15, 1995, when the Board of Immigration Appeals dismissed his appeal. *Id.* However, Mr. Mofrad was not removed. After some unspecified-in-the-record amount of time in Immigration and Customs Enforcement ("ICE") custody, Mr. Mofrad was released under an Order of Supervision on April 15, 2003. Doc. 1 at 13.

On June 25, 2025—nearly eight months ago—the federal government unexpectedly arrested Mr. Mofrad. Doc. 10-1 at 2. He has been detained ever since. He is currently incarcerated at the Otero County Processing Center in Chaparral, New Mexico. Doc. 1 at 2.

---

[2] The Federal Respondents inconsistently represent that Mr. Mofrad entered the United States in 1995. Doc. 10-1. Because the official documents provided by the Federal Respondents show that he entered in 1975, the Court presumes that this discrepancy is a Scrivener's Error.

[3] Mr. Mofrad has a criminal history in the United States. *See* Doc 10-2. However, I do not detail his criminal history because it is not relevant to my *Zadvydas*-based analysis below. While the government may detain aliens past the removal period based on certain criminal histories, 8 U.S.C. § 1231(a)(6), criminal history cannot justify detaining an alien "*indefinitely* beyond the removal period." *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). Mr. Zadvydas himself had a "long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft." *Id.* at 684; *see also Jimenez Chacon v. Lyons*, No. 2:25-CV-977-DHU-KBM, 2025 WL 3496702, at *8 (D.N.M. Dec. 4, 2025) (noting the same).

II.      **The Parties' Arguments**

Mr. Mofrad seeks his immediate release. Doc. 1 at 9. He argues that his continued detention violates 8 U.S.C. § 1231(a)(6) of the Immigration and Nationality Act ("INA") and the Substantive and Procedural Due Process Clause of the Fifth Amendment to the United States Constitution. Doc. 1 at 7–8. He claims that he is being detained even though his removal "is not significantly likely to occur in the reasonably foreseeable future." *Id.* at 7 ¶ 22.

Mr. Mofrad explains in his petition that in an interview in April 2003, the Iranian Consulate "disavow[ed]" his Iranian citizenship and "refuse[d] to provide the requisite travel documents." Doc. 1 at 13. He states that a second interview with the Iranian Consulate occurred on October 3, 2025, and the Iranian Consulate again disavowed his citizenship and refused to provide travel documents for Mr. Mofrad. *Id.* Mr. Mofrad explains, "when the Islamic Republic took over Iran in 1978, everyone related or connected to the Rule of [the Shah of Iran] was executed or vanished." *Id.* He states that the Islamic Republic of Iran does not view him as an Iranian citizen because he "fled to the United States in 1975 before the SHAH was exiled." *Id.* Mr. Mofrad argues that "[t]he circumstances preventing petitioner[']s removal to Iran or other accepting third country have not changed," over the past several decades. *Id.* at 11.

The Federal Respondents argue that Mr. Mofrad has "not shown there is no significant likelihood of removal in the reasonably foreseeable future." Doc. 10 at 1. And to the extent that he has, the "Respondents have rebutted any such finding." *Id.* The Federal Respondents state that "ICE [Enforcement and Removal Operations ("ERO")] remains engaged with removal efforts, including recent communications with the Iranian embassy regarding Petitioner's removal." *Id.* at 3 (citing Doc. 10-1 at ¶¶ 16-19). The Federal Respondents provided a Declaration from Assistant Field Office Director ("AFOD") Jose P. Ortez. Doc. 10-1. AFOD Ortez reports that

3

"[o]n November 11, 2025, ERO spoke to the Iranian embassy for an update on the petitioner['s] removal." *Id.* at 3 ¶ 16. Then, "[o]n December 12, 2025, ERO contacted the Iranian embassy for an update on the petitioner[']s removal." *Id.* at ¶ 17. He also states that ERO conducted its own review at 90-days and 180-days of Mr. Mofrad's detention and found that "there is a significant likelihood of removal in the reasonably foreseeable future." *Id.* at ¶¶ 15, 18.

I informed the parties that I did "not plan to hold a hearing on this petition unless requested by the parties." Doc. 6 at 2. Neither party requested a hearing, and I do not believe a hearing is necessary.

## III.    Discussion

I recommend that the Court find that Mr. Mofrad's Fifth Amendment rights are being violated by his indefinite detention. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Accordingly, I recommend that the Court order Mr. Mofrad's immediate release and restore his Order of Supervision under the same terms as were in place before his most recent detention.

This Court is authorized to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687–88).

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical

restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."[4] 8 U.S.C. § 1231(a)(1)(A). This period of time is called the "removal period." *Id.* The removal period begins once the removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed on appeal or the time to file an appeal has expired, 8 U.S.C. § 1101(a)(47)(B). In certain enumerated circumstances, an alien "may be detained beyond the removal period." § 1231(a)(6); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021) (discussing the circumstances where an alien may remain "detained after 90 days have passed").

However, in *Zadvydas*, the Supreme Court explained that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As such, the Court construed § 1231(a)(6) to limit "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

Under *Zadvydas*, six months of post-removal order detention is "presumptively reasonable." *Id.* at 701. After this point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This presumption does not mean that every alien must be released if not removed after six months in detention. *Id.*

---

[4] The Court recognizes that some consider the term "alien" to be pejorative. However, the term "alien" is used in the relevant statutory framework. The Court uses this word to avoid legal imprecision or ambiguity that may be caused by using an alternative word.

Rather, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

To show that a petitioner has a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," they are not required to "show the absence of *any* prospect of removal." *Id.* at 702. Instead, they are only required to provide a "good reason to believe" that removal is unlikely—"[t]his distinction is not a matter of semantics, but an important clarification of Petitioner's burden at this stage. *Aguilar v. Noem*, No. 25-CV-03463-NYW, 2025 WL 3514282, at *4 (D. Colo. Dec. 8, 2025) (citation omitted). Courts have found that such a "good reason" exists when the presumptively reasonable six months of detention have passed, and other circumstances also indicate that there is no significant likelihood of removal. *See, e.g.*, *Ahrach v. Baltazar*, No. 25-CV-03195-PAB, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025) (Petitioner detained for roughly seven months and "ICE made no efforts to remove [her] beyond soliciting acceptances" from three countries on just one day); *Salazar-Martinez v. Lyons*, No. 2:25-CV-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (Petitioner detained for seven months and "ICE has not 'identif[ied] any country that has agreed to accept her'"); *Zhuzhiashvili v. Carter*, No. 25-3189-JWL, 2025 WL 2837716, at *2 (D. Kan. Oct. 7, 2025) (Petitioner detained for seven months and "officials have made no progress towards his removal or even identified a possible destination"); *Vargas v. Noem*, No. 25-3155-JWL, 2025 WL 2770679, at *2 (D. Kan. Sept. 29, 2025) (Petitioner detained for nine months and "officials have not been able even to name for him any country to which an inquiry has been made or to which petitioner might possibly be removed"). Notably, "[t]he mere fact that the requisite six months have now elapsed is not sufficient to meet [Petitioner's]

burden." *Reyna-Salgado v. Noem*, No. 25-3172-JWL, 2025 WL 3209007, at *2 (D. Kan. Oct. 3, 2025) (citing *Zadvydas*, 533 U.S. at 701).

After a petitioner has shown that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden turns to the respondents to rebut the petitioner. *Zadvydas*, 533 U.S. at 701. The respondents must provide "evidence" in rebuttal. *See id.* "Unsubstantiated assertions do not meet this burden." *Aguilar*, 2025 WL 3514282, at *6 (citing *Pena-Gil v. Lyons*, No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) (collecting cases)). "[M]ere intent to find a third country is too speculative to permit indefinite detention or to overcome [petitioner's] showing. *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025), *report and recommendation adopted*, No. CV 25-1067-J, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025). "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, No. 9:25-CV-216-MJT, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (quotation omitted). "[G]ood faith efforts to effectuate . . . deportation" without a significant likelihood of reasonably foreseeable removal are insufficient. *Zadvydas*, 533 U.S. at 702. Further, the respondents' allegations, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

Finally, *pro se* litigants' "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, "it is [not] the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

In this case, Mr. Mofrad is entitled to habeas relief because he is being detained with no significant likelihood of removal in the reasonably foreseeable future.

Mr. Mofrad has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Mr. Mofrad has been detained for seven months, and there are no signs that he is any closer to removal than he was thirty years ago in 1995 when he was first ordered removed. Mr. Mofrad asserts that Iran has "disavow[ed]" his Iranian citizenship and refused to provide him travel documents both in 2003 and 2025. Doc. 1 at 11. This consistency in messaging from the Iranian Consulate over a twenty-two-year period provides for more than good cause for concern that Iran is not going to accept Mr. Mofrad. Further, in the fifty years that Mr. Mofrad has lived in the United States, the Respondents have not identified nor contacted a third country to which he could be deported. *Compare with Ahrach*, 2025 WL 3227529, at *4; *Salazar-Martinez*, 2025 WL 3204807, at *2; *Zhuzhiashvili*, 2025 WL 2837716, at *2; *Vargas*, 2025 WL 2770679, at *2. Under these circumstances, Mr. Mofrad has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

The Respondents have not met their burden to show that there is a significant likelihood of removal in the reasonably foreseeable future. *See id.* While the Federal Respondents have provided some evidence to attempt to rebut Petitioner's showing, *see* Docs. 10-1–10-5, 15, the evidence is insufficient. The Federal Respondents explain that they have contacted the Iranian embassy twice—once in November 2025 and once in December 2025. Doc. 10-1 at 3 ¶¶ 16, 17. However, they do not indicate whether Iran has agreed to accept Mr. Mofrad, has considered accepting him, or has provided travel documents for him. Indeed, it is not clear if Iran has even responded to the Federal Respondents' inquiries about Mr. Mofrad's case. *See Lorenzo v. Bondi*,

No. 2:25-CV-00923 KWR-GJF, 2026 WL 84521, at *5 (D.N.M. Jan. 12, 2026) (noting that "unilateral effort without establishing actual progress toward removal" is insufficient to meet the respondent's burden). The Court provided the Respondents an opportunity to "supplement the record with any additional details regarding Enforcement and Removal Operations' ("ERO's") contact with Iran, or any other country, regarding Mr. Mofrad." Doc. 13 at 2. However, they declined to do so. Doc. 15. The Respondents also have not attempted to rebut Mr. Mofrad's assertion that Iran has consistently disavowed his citizenship and refused to provide travel documents for him. The Federal Respondents do state that ERO conducted its own reviews of Mr. Mofrad's detention, and in ERO's opinion "there is a significant likelihood of removal in the reasonably foreseeable future." *Id.* at 3 ¶¶ 15, 18. But this is merely an "unsubstantiated assertion." *Aguilar*, 2025 WL 3514282, at *6. Based on the information that the Respondents have provided, the Court has no independent reason to believe that ERO's assessment is accurate or based in fact. Despite Mr. Mofrad's current seven-and-a-half months of detention and the unknown length of detention in the early 2000s, the government has made extraordinarily few efforts to deport him to Iran, and no efforts at all to deport him to a third country. *Compare with Ahrach*, 2025 WL 3227529, at *4 (granting *Zadvydas* petition after Petitioner was detained for roughly seven months and "ICE made no efforts to remove [her] beyond soliciting acceptances" from three countries on just one day). The Federal Respondents have not provided sufficient evidence to show that there is a "significant likelihood" that Mr. Mofrad will be removed "in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

Accordingly, Mr. Mofrad's Due Process rights have been violated by his indefinite detention, and his habeas petition should be granted. *See also Mommenia*, 2025 WL 3011896 (similarly granting *Zadvydas*-based habeas petition from Iranian Petitioner who was ordered

9

removed in the 1990s and was recently detained after living in the United States since the 1970s).

## IV.    Recommendation

I recommend that the Court find that Mr. Mofrad's Fifth Amendment rights are being violated by his indefinite detention. Accordingly, I recommend that the Court GRANT Petitioner Farid N. Mofrad's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1). I recommend the Court order Mr. Mofrad's immediate release and restore the Order of Supervision under the same terms as were in place before his most recent detention.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma,* **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
JENNIFER M. ROZZONI
United States Magistrate Judge

10