# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FARID NIKKHOO MOFRAD,

Petitioner,

v.                                                   Case No. 2:25-cv-01319 KWR-JMR

KRISTI NOEM, *Secretary of the Department*
*of Homeland Security,*
TODD LYONS, *Acting Director, United States Immigration and*
*Customs Enforcement,*
PAMELA BONDI, *Attorney General of the United States*, *and*
DORA CASTRO, *Warden of the Otero County Processing Center,*

Respondents.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas

Corpus (Doc. 1). Petitioner is subject to a final order of removal under 8 U.S.C. § 1231 and is in

detention pending his removal from the country. Petitioner asserts there is no significant likelihood

of his removal in the reasonably foreseeable future, and he should be released under *Zadvydas v.*

*Davis*, 533 U.S. 678 (2001).

The Court referred the Petition to United States Magistrate Judge Jennifer M. Rozzoni to

provide Proposed Findings and a Recommended Disposition ("PFRD"). Judge Rozzoni

recommended that the Court grant the habeas petition. The Federal Respondents objected to the

PFRD. The Court concludes that Petitioner is entitled to release because he is detained without a

significant likelihood of removal in the reasonably foreseeable future in violation of *Zadvydas v.*

*Davis*, 533 U.S. 678 (2001). Therefore, having reviewed the parties' pleadings, briefing, and the

relevant law, the Court finds that the Petition is well-taken and therefore is **GRANTED.** The Court orders Respondents to immediately release Petitioner as set forth below.

**BACKGROUND**

I.       <u>**Factual Background.**</u>[1]

Petitioner was born in Iran in 1959. Doc. 10-2 at 1. He entered the United States in 1975 on a non-immigrant student visa (F-1). *Id.* at 3. On April 4, 1994, an immigration judge ordered Petitioner removed. *Id.* That removal order became final on February 15, 1995, when the Board of Immigration Appeals dismissed his appeal. *Id.* However, Petitioner was not removed. *Id.*; Doc. 1 at 13. Between 1995 and 2003, Petitioner apparently oscillated between immigration custody, state custody for various criminal offenses, and release. Ortez Decl. ¶¶ 8-12, Doc. 10-1; Doc. 10-2 at 2 (listing four separate criminal arrests and convictions between 1995 and 2003 with sentences of imprisonment for 80 months, 44 months, 3 days, and 90 days). He was placed on his last Order of Supervision on April 15, 2003. Ortez Decl. ¶ 13. It appears that Order of Supervision was not revoked until June 25, 2025. Ortez Decl. ¶ 14. He has been in ICE custody since then and is currently detained at the Otero County Processing Center in Chaparral, New Mexico. Doc. 1 at 1-2.

II.       <u>**Respondents' attempts to remove Petitioner.**</u>

The Federal Respondents provided a Declaration from Assistant Field Office Director ("AFOD") Jose P. Ortez. Ortez Decl., Doc. 10-1. AFOD Ortez states that "[o]n November 11, 2025, ERO spoke to the Iranian embassy for an update on the petitioner['s] removal." *Id.* ¶ 16. Then, "[o]n December 12, 2025, ERO contacted the Iranian embassy for an update on the petitioner[']s removal." *Id.* ¶ 17. The record is silent on whether the Iranian embassy ever

---

[1] Respondents did not object to the factual findings set forth in the Magistrate Judge's PFRD. Obj., Doc. 17 at 1.

2

responded or agreed to accept him. AFOD Ortez also states that ERO conducted its own review of Petitioner's detention and found that "there is a significant likelihood of removal in the reasonably foreseeable future." *Id.* ¶¶ 15, 18. However, AFOD Ortez does not give details supporting his conclusion that there is a significant likelihood of removal in the reasonably foreseeable future.

The Ortez Declaration includes a cursory reference to removal to a third country. Ortez Decl. ¶ 19. Notably, Respondents have not identified any third country where Petitioner may be removed, and do not assert that they have taken any steps or action to identify a third country or remove Petitioner to a third country.

### III.    **Procedural Background.**

On January 12, 2026, the District Judge presiding in this case screened the Petition pursuant to Habeas Rule 4. Doc. 2. The Court declined to dismiss the case and concluded an answer was necessary. *Id.* The Court set deadlines in the case, including 21 days for Respondents to answer the Petition. *Id.*

If a case survives screening (i.e., states a claim), the Court must consider whether the case requires a factual record. In the Court's experience, shorter deadlines can lead to inadequate briefing, incomplete records from immigration authorities, and an inadequate record, preventing the court from issuing a timely, thorough, or correct decision. The United States Attorney's Office must coordinate with other agencies to put together a factual record to respond to various factual allegations by a petitioner. This includes not only obtaining documents but producing declarations and affidavits. Cutting short the briefing deadline may delay adjudication of the case because it forces the Court to order supplemental briefing to obtain an adequate record. Moreover, by giving parties adequate time to develop briefing and a record, it hopefully obviates the need for a hearing or for parties to present argument, issues and even facts on appeal which were not presented to the district court.

On January 15, 2026, the Court decided to refer this case to the Magistrate Judge assigned as the referral judge in this case for a recommendation on dispositive proceedings pursuant 28 U.S.C. § 636(b)(1)(B). *See* Doc. 5 at 1. The next day, the Magistrate Judge *sua sponte* reconsidered and vacated the District Judge's screening order and set new deadlines because she disagreed with the District Judge. *See* Doc. 6. The Magistrate Judge re-screened the Petition, stating: "Upon receipt of the referral, I screened Mr. Mofrad's petition to determine whether it had merit . . . . It appears that Mr. Mofrad has a potentially meritorious claim that he is being indefinitely detained . . . ." *Id.* at 2 (the "Order Vacating and Resetting Deadlines"). This was unnecessary, as the presiding District Judge already screened the case under Habeas Rule 4 and concluded that the case stated a claim.

The Magistrate Judge then vacated the District Judge's deadlines, stating "I am ordering an expedited briefing schedule so that Mr. Mofrad does not spend more unnecessary time in detention—if it is indeed true that he is being unlawfully detained." *Id*. She ordered the Federal Respondents to file an answer within seven days of the entry of her order and allowed Petitioner to file an optional reply within "**three (3) days** after service of the [R]espondents' answer brief(s)." *Id.* The Federal Respondents' answer was due within effectively four business days of the entry of the Order Vacating and Resetting Deadlines, as Monday was a holiday.

The Federal Respondents timely filed an answer to the Petition. They filed a mere four-page response. In a footnote, counsel noted that he did not possess all records, and he requested "the opportunity to supplement the record upon receipt." Resp., Doc. 10 at 2 n.1. Citing this footnote, the Magistrate Judge *sua sponte* entered an Order to Supplement Record, directing the Respondents to supplement the record by February 17, 2026. Doc. 13. In sum, under the District Judge's order, an answer from Respondents would have been due on February 2, 2026, well before February 17.

The Magistrate Judge filed her PFRD on February 18, 2026. Doc. 16. The PFRD notified the parties of their ability to file an objection within fourteen days (plus three days for mailing) of the filing of the PFRD, and that failure to do so waived appellate review. *Id*. at 10. On March 4, 2026, the Federal Respondents filed an objection to the Magistrate Judge's PFRD. Obj., Doc. 17. The Warden did not object.

## LEGAL STANDARDS

### I.      Habeas Law.

Petitioner seeks release from detention under a habeas statute, 28 U.S.C. § 2241. The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

### II.      Standard of Review for Proposed Findings and Recommended Disposition.

This matter is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition. "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. One Parcel*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). The Tenth Circuit has adopted a firm waiver rule, where the failure to make timely and specific objections to a PFRD waives both district court and appellate review. *Id.* at 1060. The Court reviews the record relevant to the objections *de novo*. *Id.*

An objection must be sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute. *Id.* at 1059-60. By contrast, an objection that is "nonspecific, too general, and fails to meaningfully address the PFRD's ultimate holding or its underlying findings and conclusions[]" may be deemed waived. *Leal v. United States*, No. CIV 22-761 JB/JFR, 2023 WL 6360864, at *4 (D.N.M. Sept. 29, 2023); *see also Shepherd v. Rios*, No. CIV-17-0427-HE, 2018 WL 1866111, at *1 (W.D. Okla. Apr. 18, 2018) (deeming waived objection that "d[id] not attempt to come to grips with the [PFRD's] analysis or conclusions in any specific way, [but] rel[ied] for the most part on re-adopting . . . earlier arguments."). The failure to file specific objections waives *de novo* review by the district court. *See One Parcel*, 73 F.3d at 1060-61.

## DISCUSSION

### I.   The Court need not *sua sponte* order further record development.

As an initial matter, the Court must determine whether the procedural irregularities in this case require additional record development. The Magistrate Judge *sua sponte* reconsidered and vacated the District Judge's screening order and deadlines, cutting short the Respondents' time to answer the Petition to four business days from the entry of the Order Vacating and Resetting Deadlines. The Court finds that this decision was erroneous for three reasons:

- The District Judge already screened the Petition and set briefing deadlines, and the Court did not expressly refer authority to vacate its own deadlines or orders;

- A magistrate judge lacks authority to *sua sponte* reconsider and vacate a district judge's order merely because she disagrees with the presiding judge's ruling, *and*

- Four business days from the entry of the Order Vacating and Resetting Deadlines is insufficient time for Respondents to develop a *Zadvydas* factual record.

6

Upon review of proposed findings by a magistrate judge, "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). A district judge may review a PFRD *de novo sua sponte*. *Thomas*, 474 U.S. at 154 ("[W]hile the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard."); *One Parcel*, 73 F.3d at 1060-61. Therefore, the Court considers as follows whether these three errors require the Court to allow Respondents to pursue further evidence or to recommit this matter with instructions to the Magistrate Judge.

First, the Magistrate Judge erred by vacating the Court's briefing deadlines. The Court completed screening of the Petition under Habeas Rule 4, i.e., determining whether the Petition stated a claim or should be dismissed, ordered an answer, and set briefing deadlines. There was nothing left to do to *screen* the Petition (i.e., determine whether the Petition states a claim) at that point. The Magistrate Judge apparently took the referral order as authorizing her to re-screen and reset the briefing deadlines. Doc. 6 at 2 ("Upon receipt of the referral, I screened . . . ."). Necessarily, the Court does not refer matters which it already completed, and it did not expressly refer authority to re-screen the Petition, or vacate its own orders or deadlines. The referral order stated in part that "[i]n accordance with the provisions of 28 U.S.C. §§ 636(b)(1)(B) . . . this case is referred to Magistrate Judge Jennifer M. Rozzoni to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to *recommend* to the Court an ultimate *disposition* of the case." Referral Order, Doc. 5 at 1 (emphasis added). Nothing in this language expressly referred authority to the Magistrate Judge to vacate the district court's orders.

Nevertheless, four days after the Court screened the Petition and set briefing deadlines, the Magistrate Judge re-screened the Petition and vacated and reset the deadlines. Doc. 6 at 2.

Second, magistrate judges acting as referral judges lack authority to *sua sponte* reconsider and *vacate* district judge orders merely because they disagree with them.[2] Under those circumstances, a magistrate judge is acting in review of a district judge. But 28 U.S.C. § 636(b) provides for district judge review of magistrate judge orders, not the other way around. Because the statute only expressly provides for district judge review of magistrate judge orders and omits any reference to magistrate judge review of district judge orders, magistrate judges necessarily lack the statutory authority to review and vacate district judge orders in referred cases. The Court's statutory interpretation is supported by the great weight of other decisions, which state that magistrate judges acting in a referral capacity lack authority under § 636 to reconsider and vacate district judge orders. *Taylor v. Nat'l Grp. of Cos., Inc.*, 765 F. Supp. 411, 413-14 (N.D. Ohio 1990) ("Section 636 of the Federal Magistrates Act, which establishes the jurisdiction and powers of federal magistrates, does not authorize magistrates to reconsider prior rulings of a district judge in referred cases."); *Esposito v. Home Depot U.S.A., Inc.*, No. CIVA 06-153S, 2008 WL 2943368, at *8 (D.R.I. July 29, 2008) ("Moreover, the function of a magistrate judge is not to review decisions of a district judge."), *vacated on other grounds*, 590 F.3d 72 (1st Cir. 2009); *Emmanouil v. Mita Mgmt., LLC*, No. CIV.A. 11-5575 JAP, 2012 WL 2339739, at *5 n.2 (D.N.J. June 19, 2012) ("28 U.S.C. § 636 sets forth the powers and duties of United States magistrate judges. That section does not expressly include the power to reconsider, alter, or set aside prior decisions of a district judge."); *Chase Manhattan Bank N.A. v. Stapleton*, Civil No.1993–29, 2008 WL 2235336, at *2

---

[2] This opinion is limited to the unique situation where a magistrate judge *sua sponte* vacates a district judge's order days after it was issued because she expressly disagrees with it. The Court distinguishes this case from those in which modifying deadlines is warranted by changed circumstances, upon request of a party, or because supplemental briefing is warranted.

(D.V.I. May 29, 2008) ("[T]he magistrate judge lacks the authority to set aside prior decisions of a district judge."); *Earl v. Turnbull*, No. A02–0224 CV (HRH), 2005 WL 3178164, at *1 (D. Alaska Nov. 22, 2005) ("The magistrate judge lacks authority to reconsider the district judge's order."); *Fieldwork Bos., Inc. v. United States*, 344 F.Supp.2d 257, 272 (D. Mass. 2004) ("Federal magistrates are thus, to some extent, subject to the authority of the district judge, but the converse is not true.") (quoting *Taylor*, 765 F. Supp. at 414).

Moreover, Article III of the Constitution does not provide an avenue for magistrate judge review of district judge orders. Rather, Article III of the Constitution allows for review of decisions by Article III judges by other superior Article III courts. *See, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (the Framers of the United States Constitution "crafted [Article III] with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them conclusively, subject to review only by superior courts in the Article III hierarchy."). Thus, the Magistrate Judge erred by reconsidering and vacating the District Judge's order.

Third, the Court disagrees with the Magistrate Judge's decision to vacate and cut short the response deadline to effectively four business days from the entry of the Order Vacating and Resetting Deadlines. This is a § 1231 *Zadvydas* case, which is a fact-intensive inquiry. The parties are required to submit evidence on the actions taken by Respondents to remove the Petitioner to show whether removal is significantly likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701 (if petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with *evidence* sufficient to rebut that showing.") (emphasis added). A *Zadvydas* claim is not amenable to summary adjudication without the development of a record.

A district court does not make rulings in the abstract. It is fundamental that a district court must allow for a sufficiently developed factual record before issuing a ruling. *See, e.g.*, *United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998) (as to claims for ineffective assistance of counsel raised on direct appeal, "a factual record must be developed in and addressed by the district court in the first instance for effective review") (quoting *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995)); *Carter v. Daniels*, 91 F. App'x 83, 85 (10th Cir. 2004) (reversing district court's decision to convert a dismissal motion to a summary judgment motion because, in part, "district court did not adequately develop the record").

As a useful guide, the Standing Order entered on January 28, 2026[3] by this district's Chief District Judge now sets ten *business days* as the *minimum* response deadline for Respondents in these § 2241 immigration cases. Standing Order, *In the Matter of Service of Process in Immigration Habeas Petitions Filed Pursuant to §§ 2241 et seq.*, No. 1:26-mc-00004, Doc. 3 (D.N.M. Jan. 28, 2026). Here, the Magistrate Judge effectively cut short the response deadline to four business days from the entry of her order,[4] as Monday was a holiday. The four-business-day deadline is substantially shorter than the minimum ten-business-day deadline that was adopted in this district and does not afford for the development of a factual record. The Court finds that this decision was erroneous.

However, subsequent developments in this case appear to have cured any prejudice to Respondents. The Federal Respondents timely filed an answer to the Petition within the time set by the Magistrate Judge. They filed a mere four-page response. In a footnote, counsel noted that he did not possess all records and requested "the opportunity to supplement the record upon

---

[3] The Magistrate Judge's Order Vacating and Resetting Deadlines was entered *before* the Standing Order was issued, and therefore did not violate the Standing Order. The Court cites the Standing Order as an example of a reasonable response deadline.

[4] Overall, Respondents had eight business days to craft an answer, from the entry of the original screening order on January 12, 2026 to the January 23, 2026 deadline set by the Magistrate Judge.

10

receipt." Resp., Doc. 10 at 2 n.1. Citing this footnote, the Magistrate Judge *sua sponte* directed the Respondents to supplement the record by February 17, 2026. Order to Supplement Record, Doc. 13. Under the District Judge's order, the answer from Respondents would have been due on February 2, 2026, well before February 17. The Magistrate Judge's Order Vacating and Resetting Deadlines thus caused "unnecessary" delay in this case.  Doc. 6 at 2.

Therefore, the Court finds that any prejudice to the Respondents was cured because the Magistrate Judge *sua sponte* granted Respondents an opportunity to submit additional evidence, which cumulatively extended Respondents' deadline well beyond the time the District Judge initially offered Respondents. Moreover, Respondents in their objection to the PFRD do not request additional time to obtain a factual record. Obj., Doc. 17 at 1 ("Undersigned counsel has not been provided with any additional information or documents with which to further supplement the record."). Rather, Respondents stated that they do not object to the factual findings in the PFRD. *Id.* Respondents do not argue or assert in their objection to the PFRD that they require additional time to submit evidence to carry their burden. Therefore, the Court is not required to allow Respondents to pursue further evidence or to recommit this matter to the Magistrate Judge with instructions.

**II.      Respondents failed to show that Petitioner's removal is significantly likely in the reasonably foreseeable future.**

Petitioner asserts that his removal from the country is not significantly likely in the reasonably foreseeable future in violation of *Zadvydas*. Petitioner made an initial showing that his removal was not significantly likely in the reasonably foreseeable future. As explained below, the burden shifted to Respondents to show that his removal is significantly likely in the reasonably foreseeable future, whether to Iran or to a third country. Respondents failed to make such a showing, and therefore Petitioner is entitled to immediate release under *Zadvydas*.

*First*, the Magistrate Judge recommended that the Petition be granted. Respondents filed a general one-page objection, which is not sufficiently specific to preserve a right to *de novo* review by a district judge. Obj., Doc. 17 at 1. Respondents only generally asserted that they met their burden. *One Parcel*, 73 F.3d at 1060 ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."). Therefore, the Court adopts the PFRD as undisputed and grants the habeas petition.

*Second*, only assuming Respondents' objection was sufficiently specific to preserve *de novo* review, the Court in the alternative conducts a *de novo* review of the record and concludes that the Petition should be granted because the record does not show that Petitioner's removal from the country is significantly likely in the reasonably foreseeable future.

An immigration detainee "in custody in violation of the Constitution or laws or treaties of the United States" may seek habeas relief. 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678 (2001). Pursuant to the Immigration and Nationality Act, the Respondents must remove a noncitizen within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, the noncitizen must be detained. *Id.* § 1231(a)(2). The removal period begins when the removal order "becomes administratively final." *Id.* § 1231(a)(1)(B)(i).

Upon expiration of the initial removal period, the Respondents may continue to detain the noncitizen, but not indefinitely. *Id.* § 1231(a)(6); *Zadvydas*, 533 U.S. at 699. Continued detainment for six months is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. After six months, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Respondents must then rebut the noncitizen's showing with evidence. *Id.*

Petitioner provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner argued that six months have lapsed, and Iran has "disavow[ed]" his Iranian citizenship and refused to provide him travel documents both in 2003 and 2025. Doc. 1 at 11. He asserts these circumstances have not changed. *Id.* He also asserts that a third country has not accepted him. *Id.*

After a petitioner has shown that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the respondents to rebut the showing. *Zadvydas*, 533 U.S. at 701. Respondents must provide "evidence" in rebuttal. *See id.* In response, the Federal Respondents submitted a Declaration by Assistant Field Office Director Jose P. Ortez. *See* Doc. 10-1. The Ortez Declaration merely asserts that Respondents contacted an embassy twice, once in November 2025 and once in December 2025. The Ortez Declaration does not describe the contacts, does not state that the embassy responded to the inquiries, and does not set forth facts suggesting that the embassy is likely to issue travel documents. *See* Ortez Decl., Doc. 10-1. Respondents do not assert that travel documents have been provided to Petitioner. Respondents also do not attempt to rebut Petitioner's assertion that Iran has consistently disavowed his citizenship and refused to provide travel documents for him. Rather, in response, they merely assert the conclusory assertion that "there is a significant likelihood of removal in the reasonably foreseeable future." *Id.* ¶ 19.

Notably, unlike other cases before the Court, Respondents do not argue or demonstrate that they are attempting to remove Petitioner to a third country. Although the Ortez Declaration cursorily uses the phrase "third country," it does not state that any actions have been taken to identify a third country or effectuate his removal to a third country. *Id.* Accordingly, the Respondents failed to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future.

**CONCLUSION**

Petitioner has been detained for more than six months, and the record demonstrates that

there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533

U.S. at 701. Petitioner is therefore entitled to be immediately released under *Zadvydas*.

**IT IS THEREFORE ORDERED AS FOLLOWS**:

1.  The Respondents' objection (Doc. 17) is **OVERRULED**;

2.  The Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 16) are **ADOPTED**;

3.  The Court **GRANTS** Petitioner Farid N. Mofrad's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1);

4.  Respondents must immediately release Mr. Mofrad and restore the Order of Supervision under the same terms as were in place before his most recent detention; and

5.  The Respondents are directed to file a certification that Petitioner has been released within **three (3) days** of the entry of this order.

_____/S/_____

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE